IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **EMILIANO VELASQUEZ,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-16-1807 |
| **BELAY TESSEMA, M.D.,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Emiliano Velasquez originally filed this 42 U.S.C. § 1983 action against Defendant Wexford Health Sources, Inc. ("Wexford"), alleging that Defendant was deliberately indifferent to his serious medical needs. Compl., ECF No. 1. He then filed a Supplement to his Complaint, adding § 1983 claims for deliberate indifference against two of his health care providers, Dr. Belay Tessema, M.D. and Dr. Asresahegn Getachew, M.D. ECF No. 8. Before Drs. Tessema and Getachew received the Complaint and Supplement, Wexford moved to dismiss or, alternatively, for summary judgment and I granted the motion, entering judgment in Wexford's favor. Sept. 19, 2017 Mem. Op. & Order, ECF Nos. 27, 28. I concluded that Mr. Velasquez had stated deliberate indifference claims against the physicians, however. *Id.* Accordingly, I ordered that the Supplement and Complaint be sent to Drs. Tessema and Getachew, and I ordered that they respond. *Id.* Additionally, I appointed pro bono counsel for Velasquez. ECF No. 32.

In accordance with the Letter Order regarding the Filing of Motions, ECF No. 41, Drs. Tessema and Getachew filed a pre-motion conference request, ECF No. 44, and the parties agreed to engage in limited discovery before Defendants filed a dispositive motion. ECF No. 46. Now

pending is Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment, ECF No. 54, which the parties fully briefed, ECF Nos. 54-1, 55, 57. A hearing is not necessary. *See* Loc. R. 105.6. Defendants attached Mr. Velasquez's medical records to their motion, ECF Nos. 54-2 – 54-15, as well as affidavits from both doctors, ECF Nos. 54-17, 54-18. Mr. Velasquez did not verify his Complaint, Supplement, or Opposition, and did not file an affidavit or any exhibits in support of his Opposition, relying only on the medical records that Defendants filed and a joint stipulation of facts. *See* Pl.'s Opp'n 2. I issued a paperless order on May 20, 2019, providing Mr. Velasquez the opportunity to verify the facts that he has alleged or to file an affidavit in support of his argument on or before June 10, 2019. *See* ECF No. 60; *see also* Fed. R. Civ. P. 56(c)(1)(4), (4). To date he has not done so. *See* Docket.

Because I have considered the medical records and Dr. Tessema's Affidavit, I will treat Defendants' motion a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Defendants have shown that no genuine disputes exist regarding the material facts and that they are entitled to judgment as a matter of law, and Mr. Velasquez has not identified more than a scintilla of evidence to support his claims, relying instead on unsupported allegations. Therefore, I will grant Defendants' motion.[1]

**<u>Standard of Review</u>**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other

---

[1] Because I conclude that Plaintiff cannot prevail on his claims against Drs. Tessema and Getachew, I need not reach their argument that they "are arguably entitled to immunity as state actors in connection with the provision of healthcare in the prison system." Defs.' Mem. 1.

materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251-52. Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Anderson,* 477 U.S. at 248–49. For example, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## Factual and Procedural Background[2]

In the September 19, 2017 Memorandum Opinion, I concluded that Mr. Velasquez "stated a claim of deliberate indifference in violation of the Eighth Amendment against Dr. Tessema" in his Supplement by alleging that "he informed Dr. Tessema at a chronic care visit that he had chronic care needs regarding his shoulder, testicles, and back and clarified that they were, indeed, chronic issues, and Dr. Tessema deliberately refused to treat him for those issues." Sept. 19, 2017 Mem. Op. 17. I noted that he alleged that "he told Dr. Tessema that he had been 'waiting and seeking care under "chronic care" for issues concerning his shoulders, and a lump on his testicles,' but 'doctors, and staff have refused to evaluate or treat Plaintiff for the problems'" and that "he told Dr. Tessema that his '[b]ack pain medication has repeatedly not been renewed.'" *Id.* (quoting Supp. 2). I concluded that he stated a deliberate indifference claim against Dr. Getachew as well by alleging that "the doctor ignored a specialist's order for an x-ray or a CAT scan, electing only to provide physical therapy." *Id.*

Following discovery, the parties now stipulate that the verified medical records provide evidence of the following facts:

1. **Dr. Tessema**

    The undisputed verified medical records show that Plaintiff was seen by Dr. Tessema only one time in 2016 for chronic care, which was on June 9, 2016. (*See*, Exh. l). Plaintiff claims that at that time, he informed Dr. Tessema that his "back pain medication has repeatedly not been renewed" and that Dr. Tessema refused to treat him for his chronic care needs. (Plaintiffs Supp. Compl. at p.2). However, the undisputed verified medical records show that on the same day, Dr. Tessema's completed a "Non-formulary Drug Request Form" to *renew* Plaintiff's prescription for Gabapentin and Tramadol Hcl to treat Plaintiff's chronic pain. (*See*, Exh. 2) In so doing, Dr. Tessema noted that non-formulary drugs (Gabapentin and Tramadol

---

[2] To decide Drs. Tessema and Getachew's Motion for Summary Judgment, I consider the facts in the light most favorable to Mr. Velasquez as the non-moving party, drawing all justifiable inferences in his favor. *Ricci v. DeStefano,* 557 U.S. 557, 585–86 (2009).

Hcl) were needed to treat Plaintiff's lumbar spinal stenosis, because the formulary drugs (NSAIDS and Tylenol) previously given to Plaintiff were ineffective.

Plaintiff also alleges that he complained to Dr. Tessema about a lump on his testicles. Dr. Tessema's medical record of the June 9, 2016 visit, however, makes no mention of testicular pain/lump. It rather indicates that the "Reason(s) for visit" included: "Cardiovascular and chronic shoulder and lower back pain" (*See*, Exh. 1) In addition, Plaintiff's sick call requests that were made most recent in time to his June 9, 2016 visit with Dr. Tessema, makes no mention of a lump on his testicles or testicular pain. Plaintiff's May 16, 2016 sick request refers to lower back pain and his May 22, 2016 sick request refers to right eye and ear pain. (*See*, Exh. 3).

Additionally, the verified medical records show that on June 9, 2016 - the same day that he had a visit with Dr. Tessema - Plaintiff was also examined by nurse practitioner Samantha Sinclair, LPN. Similar to Dr. Tessema's medical record, Nurse Sinclair also did not record any complaints made by Plaintiff regarding testicular pain or lump. (*See*, Exh. 4).

On June 22, 2016, Plaintiff had, yet, another visit with a different nurse, Nosakhare Aihevba, RN. Nurse Aihevba documented: "Reason(s) for visit: left and right shoulder pain, itchy and burning eyes." (*See*, Exh. 5) Again, there is no record of Plaintiff making any complaints of testicular pain.

The undisputed verified medical records reveal that it was not until June 29, 2016, that Plaintiff made a complaint of testicular pain to a healthcare provider. Such complaint was documented by Crystal Jamison, PA. (*See*, Exh. 6)

**2. Dr. Getachew**:

In Plaintiff's Supplemental Complaint, he states that on July 19, 2016, he was evaluated by a neurologist at the University of Maryland, who recommended an x-ray/CAT scan of his back. (*See*, Suppl. Comp. at p. 2) Subsequent to that visit, on July 25, 2016, Plaintiff was seen by Dr. Memarsadeghi in follow-up. (*See*, Exh. 7). Plaintiff alleges that Dr. Memarsadeghi "called me back 81/1/16, and advised that Dr. Getachew said go to physical therapy and denied xray/cat scan", (Suppl. Compl. at p. 3). However, Dr. Memarsadeghi's record of Plaintiff's August 1, 2016 visit reflects, in relevant part: "Reason for Visit: Back Pain (follow-up) Talked to RMD (Regional Medical Director) on ortho suggestions." (RMD parenthetical interpretation added). (*See*, Exh. 8) There is no mention in Dr. Memarsadeghi's August 1, 2016 medical record that Dr. Getachew or any other healthcare provider denied the recommendation for an x-ray or CAT scan. Moreover, an earlier verified medical record shows that Dr. Getachew was the physician who originally "approved" Plaintiff's neurological evaluation which enabled him to be seen by the neurosurgeon at University of Maryland. (*See*, Exh. 9) In addition, the verified medical records show that Plaintiff, did in fact, undergo a lumbar spine x-ray on **August 4, 2016**; which indicates, "Impression: No acute osseous abnormality". (*See*, Exh. 10)

Further evidence demonstrating that Plaintiff was not denied a CT scan, is a January 24, 2017 verified medical record from Dr. Mulugeta Akal which states:

> "He underwent MRI of the lumbar spine on 6/2015 and was seen by neurosurgeon at UMMC on 7/20/16. **The neurosurgeon recommended CT of the Lumbar spine without contrast. I concur with the Neurosurgeon's recommendation.** Will be discussed again in collegial." (*See*, Exh. 11) A CT of Plaintiff's lumbar spine was performed on February 23, 2017. (*See*, Exh. 12)
>
> Plaintiff also had a subsequent follow-up visit with a neurosurgeon on August 16, 2017, where a recommendation was made for "continued maximal medical management. Patient may benefit from bracing/orthotics, physical therapy/core muscle strengthening exercises...". (*See*, Exh. 13) The verified medical records show that in addition to medications and physical therapy, Plaintiff continued to be evaluated and treated for his chronic pain, and he even underwent a cervical spine CT as recent as January 10, 2018. (*See*, Exh. 14)

Defs.' Mem. 2–5; *see* Pl.'s Opp'n 2 ("adopt[ing] and incorporat[ing] [Defendants'] Stipulation of Facts as to the contents of the verified medical records"). Insofar as Plaintiff's allegations that he complained are contradicted by the medical records showing that he did not complain about conditions at the particular visits when he said he did, *see* Defs.' Mem. 2–3, I note that the absence of a factual statement in a business record under circumstances where it would be reasonable to expect it to be included is itself proof that the statement was not made. *See* Fed. R. Evid. 803(7).

In his Statement of Facts, Plaintiff also "adopts and incorporates the facts alleged [in] his Supplement to the Complaint filed on August 10, 2016." Pl.'s Opp'n 2. Those allegations include his assertion that he informed Dr. Tessema on June 9, 2016 that he had "been waiting for chronic care issues for over 90 days, including treatment for his shoulders, and a lump on his testicles" and that "his back pain medications had repeatedly not been renewed," as well as his assertion that Dr. Getachew "denied him a lumbar spine x-ray and a CT scan to the lumbar spine, which had been ordered by a neurosurgeon at the University of Maryland on July 20, 2016." *Id.* at 2-3 (citing Supp. ¶ 3(f), (g) (i)). But, Plaintiff's Supplement is not verified. *See* Supp. As a result, it is only allegations and not evidence, and Mr. Velasquez cannot rely on those allegations to oppose Defendants' dispositive motion in lieu of providing evidence in support of his position. *See Anderson*, 477 U.S. at 247-48; *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 585–87 & n.10.

**Discussion**

Section 1983 imposes liability on "any person who . . . subject[s], or cause[s] to be subjected, any person . . . to the deprivation of any rights." 42 U.S.C. § 1983. To prevail on a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate a violation of a federal constitutional right or a right secured by federal law. *Baker v. McCollan,* 443 U.S. 137, 140 (1979). Claims of failure to protect and deliberate indifference are examined in light of the Eighth Amendment, which prohibits "cruel and unusual punishments," such as those involving the "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976).

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "[D]eliberate indifference requires more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 696 (internal quotation marks omitted).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component is satisfied only where a prison official "subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

<u>Dr. Tessema</u>

Mr. Velasquez alleges that Dr. Tessema was deliberately indifferent to three serious medical needs when Velasquez saw him on June 9, 2016. First, he claims that he told Dr. Tessema that he was waiting for care "for issues concerning his shoulders." Supp. ¶ 3(f). The Provider Chronic Care Visit record for that date, however, states that "Patient has no limitation in shoulder mobility and function." Med. Rec., ECF No. 54-2, at 2; *see also* Tessema Aff. ¶ 4, ECF No. 54-17 ("On June 9, 016, my physical examination of Plaintiff revealed . . . that he had no limitation in shoulder mobility and function and he was in no apparent distress."). On this record, he cannot

show, objectively, that he was suffering from a serious medical need concerning his shoulders. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Evid. 803(7). Further, without any evidence that his shoulder needed treatment at that time, Mr. Velasquez cannot establish subjectively that Dr. Tessema was aware of or disregarded a need for medical attention. *See Farmer*, 511 U.S. at 837; *Jackson*, 775 F.3d at 178. Therefore, Mr. Velasquez cannot prevail on a deliberate indifference claim based on Dr. Tessema's failure to order treatment for his shoulders, and Dr. Tessema is entitled to judgment in his favor on this claim. *See Farmer*, 511 U.S. at 837.

Second, he claims that he informed Dr. Tessema that he needed treatment for "a lump on his testicles." Supp. ¶ 3(f). But, there is not any evidence that Mr. Velasquez reported the lump to Dr. Tessema. Rather, the medical records from his June 9, 2016 visit to Dr. Tessema, as well as the records of his June 9, 2016 nurse visit, his May 16 and 22, 2016 sick requests, and his June 22, 2016 nurse visit show that he made other complaints but did not mention a lump on his testicle. *See* Med. Recs., ECF Nos. 54-2, 54-4 – 54-7. And, Dr. Tessema stated in his affidavit that Velasquez "did not make any mention of testicular pain during th[e] [June 9, 2016] visit." Tessema Aff. ¶ 3. Mr. Velasquez's unsupported allegations to the contrary do not suffice. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986); Fed. R. Evid. 803(7); *see also Scott*, 550 U.S. at 380. Mr. Velasquez cannot establish Dr. Tessema's deliberate indifference to a condition of which he was not aware, and therefore, Dr. Tessema is entitled to judgment in his favor on this claim. *See Farmer*, 511 U.S. at 837.

Third, Mr. Velasquez claims that he informed Dr. Tessema that his "[b]ack pain medication has repeatedly not been renewed, despite extreme pain." Supp. ¶ 3(g). Yet,

> the undisputed verified medical records show that on the same day, Dr. Tessema[] completed a "Non-formulary Drug Request Form" to *renew* Plaintiff's prescription for Gabapentin and Tramadol Hcl to treat Plaintiff's chronic pain. (*See*, Exh. 2) In so doing, Dr. Tessema noted that non-formulary drugs (Gabapentin and Tramadol

9

Hcl) were needed to treat Plaintiff's lumbar spinal stenosis, because the formulary drugs (NSAIDS and Tylenol) previously given to Plaintiff were ineffective.

Defs.' Mem. 2. Not only does Mr. Velasquez not identify any evidence to support his claim, he adopts Defendants' presentation of the facts in the verified medical record. *See* Pl.'s Opp'n 2. Indeed, he concedes that "the verified medical records indicate that Defendant Tessema responded to and provided some level of treatment for Plaintiff's chronic back pain condition by ordering medications." *Id.* at 14. Thus, it is undisputed that Dr. Tessema provided the medical attention Mr. Velasquez sought by renewing Velasquez's back pain medication for him. Therefore, Mr. Velasquez cannot prevail on a claim of deliberate indifference regarding Dr. Tessema's response to Velasquez's request for back pain medication, and Dr. Tessema is entitled to judgment in his favor on this claim as well. *See Farmer*, 511 U.S. at 837.

### Dr. Getachew

Mr. Velasquez saw a neurosurgeon at the University of Maryland on July 20, 2016 regarding his back pain, and the neurologist "[r]ecommend[ed] CT [scan of his] Lumbar spine without contrast" and "[r]ecommen[ed] Lumbar lateral x-rays in flexion and extension"; he planned to "[f]ollow up in clinic in 1 month with this new imaging" for "potential surgery discussion." July 20, 2016 Med. Rec. 1, 3, ECF No. 57-1;[3] *see* Pl.'s Supp. 2 ("[n]eurologist recommended xray/cat scan"). He had a Provider Chronic Care Visit on July 25, 2016 with Dr. Mahboobeh Memarsadeghi, M.D., who noted that "he was seen by Dr. Gregory Cannarsa at UM." July 25, 2016 Med. Rec., ECF No. 54-8. Dr. Memarsadeghi observed that Dr. Cannarsa

---

[3] Defendants note that, while Mr. Velasquez refers to a July 19, 2016 visit to University of Maryland, the medical records show that the visit actually occurred on July 20, 2016. Defs.' Reply 3 n.1 & Ex. 1, ECF No. 57-1; *see also* Jan. 24, 2017 Med. Rec., Defs.' Mem. Ex. 11, ECF No. 54-12 (noting that Velasquez "was seen by neurosurgeon at UMMC on 7/20/16" and "[t]he neurosurgeon recommended CT of the Lumbar spine").

10

recommended a CT scan and x-rays, with follow up one month later to consider surgery with the benefit of the images. *Id.*

According to Mr. Velasquez, Dr. Memarsadeghi "said she would order an xray, cat-scan based on recommendation of neurologist," but then on August 1, 2016, Dr. Memarsadeghi "advised [him] that Dr. Getachew said go to physical therapy, and denied xray/cat scan, without any examination by him or any staff." Pl.'s Supp. ¶ 3(i). Mr. Velasquez claims that Dr. Getachew's failure to order an x-ray or CT scan was deliberate indifference. *See id.* ¶ 3(j).

In the medical record for Mr. Velasquez's August 1, 2016 Provider Visit, Dr. Memarsadeghi noted that she spoke with Dr. Getachew about Dr. Cannarsa's recommendations and that Velasquez would "have a PT [physical therapy] evaluation for disability evaluation." Aug. 1, 2016 Med. Rec., ECF No. 54-9 ("Talked to RMD [Regional Medical Director, i.e., Dr. Getachew] on ortho suggestions."). It is undisputed that three days later, on August 4, 2016, which was only fifteen days after the July 20, 2016 appointment with the neurosurgeon, Mr. Velasquez had a lumbar spine x-ray. *See* Defs.' Mem. 4; Pl.'s Opp'n 2; Aug. 4, 2016 Report, ECF No. 54-11. Thus, Mr. Velasquez cannot prevail on a claim that Dr. Getachew was deliberately indifferent to his needs by failing to provide him with an x-ray, when he did indeed receive an x-ray. *See Farmer*, 511 U.S. at 837.

As for the CT scan of his lumbar spine, it is undisputed that he ultimately received it, also, albeit not until February 23, 2017. Med. Rec., ECF No. 54-13. The issue, then, is whether Dr. Memarsadeghi's statement, after consultation with Dr. Getachew regarding Dr. Carrarsa's recommendations, that Mr. Velasquez would have a physical therapy evaluation (not a CT scan), and the seven-month delay between Dr. Cannarsa's recommendation of a CT scan and Mr. Velasquez's receipt of a CT scan shows that Dr. Getachew was deliberately indifferent to

Velasquez's serious medical needs. Preliminarily, Dr. Getachew was not the treating physician and there is no evidence that he participated in Mr. Velasquez's treatment beyond consulting with Dr. Memarsadeghi as the treating physician.

Moreover, "the right to treatment is 'limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*.'" *Haughie v. Weber*, No. GJH-17-3822, 2019 WL 1317354, at *8 (D. Md. Mar. 21, 2019) (quoting *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977)). Here although the neurosurgeon recommended (but did not order) both an x-ray and a CT scan, Mr. Velasquez's treating physician instead elected for Velasquez's condition to be assessed through the x-ray, without a CT scan, and physical therapy. Notably, the x-ray showed:

> There is no evidence of an acute fracture, dislocation or subluxation. Vertebral body [unclear] and disc spaces are grossly intact. There is a posterior fusion defect at the lumbosacral junction with chronic spondylosis at the L5-S1 level. Lumbar lordosis is straightened.
> **Impression**: *No acute osseous abnormality*.

Aug. 4, 2016 Report (emphasis added). On this record, Mr. Velasquez cannot demonstrate that a CT scan, in addition to the other assessments, was medically necessary at that time. The fact that the neurosurgeon recommended a CT scan and Mr. Velasquez believes that a prompt CT scan would have been a better course of treatment does not establish deliberate indifference on the part of Dr. Getachew (or Dr. Memarsadeghi, for that matter) for delaying the CT scan for several months while Velasquez's condition was assessed by other means. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); *see also Dent v. Wexford Health Sources, Inc.*, No. CCB-15-206, 2017 WL 930126, at *8 (D. Md. Mar. 9, 2017) ("Plainly there was an extensive interval of time between the implicit diagnosis of

a torn meniscus by Dr. Carls in September, 2014, and Dent's receipt of an MRI and surgery in July and October, 2015. The question for the court is whether such a delay demonstrates 'deliberate indifference' in light of the conservative care Dr. Ottey claims Dent was provided. *Estelle*, 429 U.S. at 106. There is no dispute that in the interim period of time between diagnosis and the MRI, Dent was afforded physical therapy, knee braces, pain analgesics, a cane, and steroid injections into his knee, all of which appear reasonable in the treatment of a torn meniscus, according to the record. . . .[T]here is nothing about Dent's treatment that indicates Dr. Ottey ignored or intentionally delayed medical care for Dent's knee problem. While Dent may be dissatisfied with the course of treatment and the health care professionals he saw, the conservative care he received for his left knee condition met the minimum constitutional requirements. No Eighth Amendment violation has been demonstrated."), *aff'd sub nom. Dent v. Ottey*, 698 F. App'x 99 (4th Cir. 2017).

Further, "delay in providing treatment does not violate the Eighth Amendment where the seriousness of the injury is not apparent." *Haughie*, 2019 WL 1317354, at *8 (quoting *Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980)). Mr. Velasquez has not demonstrated a serious medical need where there was "[n]o acute osseous abnormality." *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Additionally, on these facts, where the CT scan was delayed while other means were used to assess Velasquez's condition, the delay in providing the CT scan "did not amount to an act or omission 'for the very purpose of causing harm or with knowledge that harm will result.'" *Johnson v. Wexford Health Sources, Inc.*, No. PX-18-1096, 2019 WL 528215, at *6 (D. Md. Feb. 8, 2019) (quoting *Farmer*, 511 U.S. at 835). Thus, Velasquez's delayed receipt of a CT scan after a neurosurgeon recommended one, and the decision to pursue a physical therapy evaluation first, does not constitute deliberate indifference to Mr. Velasquez's serious medical needs, especially not by Dr. Getachew who was not treating Mr.

Velasquez. *See Farmer*, 511 U.S. at 835, 837; *Haughie*, 2019 WL 1317354, at *8; *Johnson*, 2019 WL 528215, at *6. Therefore, Mr. Velasquez cannot prevail on his claim against Dr. Getachew, and Dr. Getachew is entitled to judgment as a matter of law. *See Farmer*, 511 U.S. at 837.

## **Conclusion**

In sum, Defendants Asresahegn Getachew, M.D. and Belay Tessema, M.D.'s Motion to Dismiss, or Alternatively for Summary Judgment, ECF No. 54, treated as a motion for summary judgment, IS GRANTED. A separate order will issue.

Date: July 10, 2019    /S/
Paul W. Grimm
United States District Judge

lyb